# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT D. GIBSON,<br><br>        Plaintiff,<br><br>    v.<br><br>BEER, et al.,<br><br>        Defendants. | CASE NO. 1:03-CV-5445 OWW DLB-PC<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE DENIED IN PART AND GRANTED IN PART<br><br>(Doc. 286) |

**Findings and Recommendations on Defendants' Motion for Summary Judgment**

**A.     Procedural History**

Plaintiff Robert D. Gibson ("plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on plaintiff's fourth amended complaint, filed April 21, 2005, against defendants Beer, Gonzales and Hayward ("defendants"). On July 11, 2008, defendants filed a motion for summary judgment. (Doc. 286.) Plaintiff filed an opposition on July 30, 2008, and defendants filed a reply on August 7, 2008. (Docs. 291, 292).[1]

Plaintiff has also filed four separate motions for summary judgment, which shall be resolved in a Findings and Recommendations issued separately. (Docs. 275, 276, 278 and 279).

**B.     Legal Standard**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue

---

[1] Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment by the court in an order filed on November 21, 2005. Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988). (Doc. 68.)

1

as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not

establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

**C.     Undisputed Facts [2]**

1.     At all times relevant to the complaint, Plaintiff was a state prisoner in the custody of the California Department of Corrections and Rehabilitations ("CDCR") and incarcerated at

---

[2] Plaintiff has filed a verified Statement of Undisputed Facts. (Doc. 291). Attached to his statement are sixty pages of exhibits. Plaintiff's opposition/statement violates Local Rule 56-260(a) because he does not "enumerate discretely each of the specific material facts relied upon in support of the motion and cite the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission or other document relied upon to establish that fact." Local Rule 56-260(a). The parties bear the burden of supporting their motion and opposition with the papers they wish the Court to consider and/or by specifically referencing any other portions of the record they wish the Court to consider. Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001).The Court will not undertake to mine the record for triable issues of fact. Id.

1       California State Prison - Corcoran (CSP-Corcoran), located in Corcoran, California.

2. At all times relevant to the complaint, Sergeant Beer, Officer Gonzales and Officer Hayward were employees of the CDCR, and assigned to CSP-Corcoran.

3. On March 31, 2004, Plaintiff was housed in CSP-Corcoran's Security Housing Unit (SHU), in Unit 4A, 1 Right.

4. On the evening of March 31, 2004, Unit 4A underwent a unit cell search.

5. That evening, a number of cells were searched, including Plaintiff's cell.

6. Defendant Gonzales informed Plaintiff that he was going to be removed from his cell in order for it to be searched.

7. Defendants Hayward and Gonzales escorted Plaintiff from his cell to the unit hallway for placement of Plaintiff in one of the hallway holding cells.

8. Both Defendants Hayward and Gonzales have received training on conducting inmate escorts and responding to situations in which an inmate becomes resistive or uncooperative during an escort. Each of them have been involved in hundreds of inmate escorts.

9. During a cell search, depending on the availability of a secure holding cell, officers escort inmates from their housing unit cells to a number of holding cages located within the unit.

10. For purposes of escorting Plaintiff to a holding cell, Defendant Hayward had a hold of Plaintiff's right elbow and Defendant Gonzales had a hold of Plaintiff's left elbow.

11. During the escort, Plaintiff stopped moving forward.

12. In Defendants Gonzales' and Hayward's observation and experience, one way in which an inmate can become passively resistant during an escort is by dragging their feet and forcing their weight in a downward motion.

13. Defendants Gonzales and Hayward ordered Plaintiff numerous times to stop resisting.

14. Correctional Officers are trained to immediately place inmates in a face-down, prone position on the floor, when an inmate becomes resistive or aggressive. This technique ensures maximum control of the inmate, while reducing the danger posed to both the inmate and staff members involved in the situation.

15. Defendant Gonzales activated his personal alarm.

16. Sergeant Beer responded to the scene and instructed Defendants Gonzales and Hayward to assist Plaintiff to his feet for medical examination.

17. Before the March 31, 2004 incident, Plaintiff did not have any problems with defendant Hayward. Likewise, defendant Hayward had no previous problems with Plaintiff.

18. Before the March 31, 2004 incident, Plaintiff had never filed a grievance or complaint against defendant Hayward.

19. At no point in time either before or after the March 31, 2004 incident has defendant Hayward spoken with Plaintiff about the incident or any related grievances filed against him.

20. Defendants contend that Plaintiff possesses no evidence that defendant Hayward used force against him in retaliation for his First Amendment activities.

21. Before the March 31, 2004 incident, defendant Gonzales contends that he had no previous problems with Plaintiff.

22. Although Plaintiff had filed a previous complaint against defendant Gonzales, Plaintiff never spoke with him about any grievance filed against him. Likewise, defendant Gonzales never spoke with Plaintiff about any grievance filed against him.

**D.     Excessive Force Claims Against Defendants Gonzales and Hayward**

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." Id. (internal quotation marks and citations omitted). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. Id. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines de minimis uses of force, not de minimis injuries)). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Id. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind." Id. at 9-10 (internal quotations marks and citations

5

omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (internal quotation marks and citations omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id.

At all times relevant to the complaint, Plaintiff was a state prisoner in the custody of the California Department of Corrections and Rehabilitations ("CDCR") and incarcerated at California State Prison - Corcoran (CSP-Corcoran), located in Corcoran, California. (Undisputed Fact 1). At all times relevant to the complaint, Sergeant Beer, Officer Gonzales and Officer Hayward were employees of the CDCR, and assigned to CSP-Corcoran. (UF 2). On March 31, 2004, Plaintiff was housed in CSP-Corcoran's Security Housing Unit (SHU), in Unit 4A, 1 Right. (UF 3). On the evening of March 31, 2004, Unit 4A underwent a unit cell search. (UF 4). That evening, a number of cells were searched, including Plaintiff's cell. (UF 5). Defendant Gonzales informed Plaintiff that he was going to be removed from his cell in order for it to be searched. (UF 6). Defendants Hayward and Gonzales escorted Plaintiff from his cell to the unit hallway for placement of Plaintiff in one of the hallway holding cells. (UF 7). Both Defendants Hayward and Gonzales have received training on conducting inmate escorts and responding to situations in which an inmate becomes resistive or uncooperative during an escort. Each of them have been involved in hundreds of inmate escorts. (UF 8). During a cell search, depending on the availability of a secure holding cell, officers escort inmates from their housing unit cells to a number of holding cages located within the unit. (UF 9). For purposes of escorting Plaintiff to a holding cell, Defendant Hayward had a hold of Plaintiff's right elbow and Defendant Gonzales had a hold of Plaintiff's left elbow. (UF 10). During the escort, Plaintiff stopped moving forward. (UF 11). In Defendant Gonzales and Hayward's observation and

experience, one way in which an inmate can become passively resistant during an escort is by dragging their feet and forcing their weight in a downward motion. (UF 12). Defendants Gonzales and Hayward ordered Plaintiff numerous times to stop resisting. (UF 13). Defendants contend that Plaintiff lunged in a forward direction. (Doc. 286, Hayward Decl., ¶11; Doc 286, Gonzales Decl., ¶11). Plaintiff disputes that he lunged forward. (Deposition of Robert D. Gibson, March 13, 2008, p.54:3-17). Defendants Hayward and Gonzales state that they believed that Plaintiff lunged forward in an attempt to break free from the escort. (Doc. 286, Hayward Decl., ¶11; Doc 286, Gonzales Decl., ¶11). Defendants state that in an attempt to maintain physical control of Plaintiff, Defendants Gibson and Hayward forced Plaintiff to the ground in a prone position. (Doc. 286, Hayward Decl., ¶12; Doc 286, Gonzales Decl., ¶12). Correctional Officers are trained to immediately place inmates in a face-down, prone position on the floor, when an inmate becomes resistive or aggressive. This technique ensures maximum control of the inmate, while reducing the danger posed to both the inmate and staff members involved in the situation. (UF 14). Defendant Gonzales activated his personal alarm. (UF 15). Sergeant Beer responded to the scene and instructed Defendants Gonzales and Hayward to assist Plaintiff to his feet for medical examination. (UF 16).

Defendants Gonzales and Hayward argue that they used reasonable force in a good faith effort to maintain and restore discipline and that the force used amounted to physical strength and holds. (Memorandum of Points and Authorities, Doc. 286, pp.7-8). Defendants also contend that plaintiff has not set forth facts or evidence to demonstrate that defendants Hayward and Gonzales acted maliciously and sadistically for the very purpose of causing harm. (Id, p.8:7-13). Therefore, defendants Gonzales and Hayward contend that they are entitled to summary adjudication in their favor on the excessive force claims against them.

The Court has reviewed defendants' motion materials, and in particular the deposition transcript of plaintiff taken March 13, 2008. The following passage recounting defendants Gonzales' and Hayward's involvement is of particular assistance to the Court:

> Q.  And you said - - and in your Complaint you alleged various things that the officers - - that each officer did to you once you were on the ground and *after you were on the ground in the prone position*. Can you describe that to me.

7

A. It's – it's kind of a blur because it's dark. I don't know who did exactly what. But I know what I felt. I felt punches, I felt someone putting their - - their elbow on the back of my neck, smashed my face down, smashed my head down on the - - on the floor, the cement floor, and then I hear Beer come from some direction in front of me - - I don't know where he was, but I could just hear his voice, "Get him up. Get him up. Get him up." Like that. "Get him up."     (*emphasis added*)

(Deposition of Robert D. Gibson, March 13, 2008, p.38:11-24)

Plaintiff denies being resistive during the escort. (Id., p.53:16-54:2). Defendants Gonzales and Hayward state that they believed plaintiff was attempting to break free from the escort. In such a situation, the defendants are trained to plaintiff the inmate in a face-down, prone position on the floor in order to control the inmate and reduce the danger posed.

However, the Court has concern about the use of force against plaintiff after he was on the ground. The deposition testimony reproduced above is evidence, albeit minimal, to raise an issue as to whether defendants' use of force was a good faith effort to maintain and restore discipline after Plaintiff was on the ground in a prone position. Defendants have presented no evidence from which the Court could conclude that punching plaintiff in such a situation was part of a good faith effort to maintain and restore discipline. Defendants have not met their burden in demonstrating the absence of a genuine issue of material fact and therefore are not entitled to summary adjudication in their favor. As a result, there is no need for the Court to refer to plaintiff's arguments in opposition for the purposes of resolving this portion of the motion for summary judgment.[3]

Defendants next contend that plaintiff has presented no set of facts or evidence to demonstrate that defendants Hayward and Gonzales acted maliciously and sadistically for the very purpose of causing harm. (Memorandum of Points and Authorities, Doc. 286, p.8:7-9). In

---

[3] The Court notes that Plaintiff has filed declarations from fellow inmates who attest to having witnessed the altercation in the main front entrance rotunda. The Court notes that the declarations of Inmate Lonnie Williams, Inmate Robert Hackworth and Inmate Michael Consero are largely inconsistent with plaintiff's own deposition testimony. Although the Court did not consider these declarations in resolving this motion, Plaintiff is cautioned that may not attempt to create an issue of fact by way of "sham" declarations contradicting his own deposition. Kennedy v. Allied Mut. Ins. Co., 952 F. 2d 262, 267 (9th Cir., 1991); see also Foster v. Arcata Associates, 772 F.2d 1453, 1462 (9th Cir.1985), cert. denied, 475 U.S. 1048, 106 S.Ct. 1267, 89 L.Ed.2d 576 (1986) and Radobenko v. Automated Equipment Corp., 520 F.2d 540, 543-44 (9th Cir.1975).

opposition, plaintiff asserts that he is entitled to an inference that the actions were "deliberately calculated to inflict sadistic pain and torment upon the plaintiff". (Opposition, Doc. 291, p.2). Given the evidence submitted that defendants punched plaintiff and smashed his face to the floor while he was prone on the ground, plaintiff has produced a factual predicate from which the inference may be drawn, for the purposes of resolving this motion for summary judgment, that the actions of defendants Hayward and Gonzales were malicious and sadistic. Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam). The Court finds that defendants Gonzales and Hayward are not entitled to summary judgment on the excessive force claims against them.

**E.    Retaliation Claims Against Defendants Beer, Gonzales and Hayward**

In Plaintiff's fourth amended complaint filed April 21, 2005, he alleges that defendant Beer's actions on March 31, 2004 were in retaliation for plaintiff's engagement in protected activity - namely his filing of inmate grievances/appeals. Plaintiff makes no specific allegations regarding Hayward and Gonzales, except to say that defendant Gonzales orchestrated the attack for his own reasons. Plaintiff also generally alleges that "the defendants had a policy of retaliation for the use of grievance filed for their abusive acts. This is a violation of the First Amendment Right to petition government". (Fourth Amended Complaint, Doc. 42, pp.7, 13, 14).

In order to resolve defendants' motion for judgment as a matter of law on the retaliation claims, the Court requires a clearer picture of the allegations raised by plaintiff and so the Court turns again to plaintiff's deposition transcript. Plaintiff attests that defendant Gonzales and Hayward were escorting plaintiff down a darkened hallway when one of the defendants stepped on his bare foot. Plaintiff was handcuffed and in leg restraints. (Deposition Transcript of Robert D. Gibson, p.31:18-32:17). Plaintiff states that he could not proceed forward. (Id., p.37:4-22). Plaintiff felt his body being pushed downward to the floor. Id. Plaintiff was then punched and attacked. (Id., p.38:16-24) Defendant Beer then arrived on the scene but did not touch plaintiff. (Id., p.38:25-p.40:9) Plaintiff was then "snatched" from the floor, turned around, and brought back to the main front entrance rotunda. (Id., p.40:12-21). Plaintiff was restrained by defendants Gonzales and Hayward. At this second location, defendant Beer made a comment about plaintiff's litigation/prison grievance

activities, and then punched plaintiff in the face. (Id., p.40:23-p.41:2). Plaintiff admits that defendants Gonzales and Hayward were "pretty much silent" through the incident from the hallway to the door, but that defendant Hayward, by being present and silent during defendant Beer's comments, was a participant in the retaliation. (Id., p.61:19-62:25). With respect to defendant Gonzales, plaintiff states that there was a silent type of agreement when defendant Gonzales did not say anything in response to defendant Beer's comment. (Id., p.67:7-21).

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

For the purposes of this motion for summary judgment, defendants do not dispute that filing a prison grievance is activity protected under the First Amendment, or that their actions were adverse to Plaintiff. Rather, defendants contend that Plaintiff fails to establish that defendants Gonzales and Hayward had the requisite retaliatory intent; that Plaintiff fails to establish any chilling of his First Amendment rights; and that defendants Hayward and Gonzales had a legitimate correctional justification for their conduct. (Memorandum of Points and Authorities, Doc. 286, pp.9-12).

      **i)  Retaliatory Intent - Defendants Gonzales and Hayward**

Defendants contend that Plaintiff has no evidence that retaliation was the substantial or motivating factor behind defendants Hayward's nor Gonzales' conduct. Before the March 31, 2004 incident, Plaintiff did not have any problems with defendant Hayward; likewise, defendant Hayward had no previous problems with Plaintiff. (UF 17). Before the March 31, 2004 incident, Plaintiff had never filed a grievance or complaint against defendant Hayward. (UF 18). At no point in time either before or after the March 31, 2004 incident has defendant Hayward spoken with Plaintiff about the incident or any related grievances filed against him. (UF 19). Defendants contend that Plaintiff

possesses no evidence that defendant Hayward used force against him in retaliation for his First Amendment activities. (UF 20).

With respect to defendant Gonzales, defendants contend that before the March 31, 2004 incident, defendant Gonzales had no previous problems with Plaintiff. (Doc. 286, Gonzales Decl., ¶18). Although Plaintiff had filed a previous complaint against defendant Gonzales, Plaintiff never spoke with him about any grievance filed against him. Likewise, defendant Gonzales never spoke with Plaintiff about any grievance filed against him. (UF 22). Defendants contend that plaintiff has no evidence that defendant Gonzales used excessive force against him in retaliation for his first amendment activities. (Deposition Transcript of Robert Gibson, p.67:1-21).

The court finds that defendants have met his initial burden of informing the court of the basis for their motion, and identifying those portions of the record which they believe demonstrates the absence of a genuine issue of material fact. The burden therefore shifts to plaintiff to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). As stated above, in attempting to establish the existence of this factual dispute, plaintiff may not rely upon the mere allegations or denials of his pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973).

In opposition, plaintiff argues that "all defendants were acting in agreement and collusion" when defendant Beer allegedly told plaintiff to "602 us Punk". Plaintiff alleges that "[t]his alone supports a violation of first amendment rights, the meeting of minds and intent to retaliate against the plaintiff was established". (Doc. 291, p.4). Plaintiff further argues that the motive of each defendant is a genuine issue of material fact that must be resolved at trial.

Arguments or contentions set forth in a responding brief do not constitute evidence. See Coverdell v. Dep't of Soc. & Health Servs., 834 F.2d 758, 762 (9th Cir. 1987) (recitation of unsworn facts not evidence). Although plaintiff contends that defendants Hayward and Gonzales attacked him for the purpose of retaliation, plaintiff has offered no evidence that defendant's actions were for

the purpose of retaliation, only conjecture.⁴ Plaintiff's recount of the events giving rise to this action does not support a claim of retaliation against defendants Gonzales and Hayward. Although both defendants were present when defendant Beer allegedly made his comment, plaintiff's has submitted no evidence that their actions in the darkened hallway prior to the escort to the main front entrance rotunda were for the purpose of retaliation. Contrary to plaintiff's assertions, simply being present and nodding does not give rise to a retaliation claim, and plaintiff has submitted no evidence in opposition. Therefore, defendants Hayward and Gonzales are entitled to summary adjudication on plaintiff claim of retaliation, in violation of the First Amendment.

### ii) Chilling Effect

Next, all three defendants assert that plaintiff's claim of retaliation against them must necessarily fail because plaintiff fails to prove any chilling of his protected First Amendment rights, and therefore fails to prove an essential element of his claim. In light of the Court's findings that defendants Gonzales and Hayward lacked the necessary retaliatory intent and are already entitled to dismissal of the retaliation claims against them, this further argument is only of importance to defendant Beer.

It is undisputed that Plaintiff filed multiple grievances concerning the March 31, 2004 incident, and in fact, "[kept] filing, [kept] flooding the paperwork in". (Deposition Transcript of Robert D. Gibson, p.71:2:17). Defendants contend that plaintiff has no evidence to support his allegation that defendants' actions were "reasonably calculated" to have a chilling effect, or would chill a person or ordinary firmness.⁵ Defendants therefore contend that plaintiff's ability to file grievances was not curtailed, interfered with, or chilled as a result of the March 31, 2004 incident.

With respect to the chilling element, the proper inquiry is whether the act "would chill or silence a person of ordinary firmness from future First Amendment activities." Robinson, 408 F.3d at 568-69 (internal quotation marks and citations omitted).

---

⁴ Plaintiff's amended complaint must be based on plaintiff's personal knowledge, not just mere belief, and must set forth facts admissible in evidence to which plaintiff is competent to testify. Johnson, 134 at 1399-1400; Lew v. Kona Hosp., 754 F.2d 1420, 1423 (9th Cir. 1985) (citation omitted).

⁵ The pleading itself contains no such allegation.

12

The fact that Plaintiff continued to file numerous grievances concerning defendants' alleged conduct is not itself evidence of a lack of chilling effect. Further, contrary to defendants' assertions, there does exist evidence of a chilling effect here. Plaintiff was asked during his deposition whether he felt that his ability to file grievances was hindered after a separate alleged retaliatory incident in 2002. Plaintiff stated that while he continued to file complaints, he felt targeted:

> A:  After the June '02 incident, I filed more complaints, of course, but you know, you feel like - - when you do that, you feel like you're kind of making yourself a target. That's what it is. When you file those complaints, you kind of make yourself a target. But if you don't file those complaints, you know, you're just - - you're just setting yourself up for the abuse anyway. You know, it's not going to stop, and you have no other way of stopping it. So it's almost like you're damned if you do, you're damned if you don't. So - -
>
> (Deposition Transcript of Robert D. Gibson, p.69:5-14).

Plaintiff was then asked specifically about the March 31, 2004 incident giving rise to this action:

> Q:  And the same thing after the '04 incident?
>
> A:  Yeah.

Plaintiff's testimony under oath that he felt like a target for filing grievances after the March 31, 2004, although minimal, is evidence of a chilling effect. There is a genuine issue of material fact as to whether defendant Beer's actions chilled plaintiff's First Amendment rights, or whether his actions would chill a person of ordinary firmness. Defendants' contention that they are entitled to summary adjudication on the retaliation claim for plaintiff's failure to prove a chilling effect, an essential element of a retaliation claim, fails. Because defendant Beer has failed to meet his burden and raised no other arguments in support of his motion, he is not entitled to summary adjudication on plaintiff's retaliation claim against him.

### F. Qualified Immunity

Finally, defendants contend that Gonzales and Hayward are entitled to qualified immunity as to all claims against them. Because the Court finds that they are entitled to judgment as a matter of law concerning the retaliation claims, the Court shall only address their qualified immunity argument with respect to the excessive force claims.

Defendants contend that they did not violate plaintiff's constitutional rights, and that a reasonable person in their positions could have believed their conduct was lawful. Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In ruling upon the issue of qualified immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001). If, and only if, a violation can be made out, the next step is to ask whether the right was clearly established. Id. The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." Saucier v. Katz, 533 U.S. 194, 201 (2002). "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Saucier, 533 U.S. at 202 (citation omitted).

In resolving the issue of qualified immunity, the court must view the evidence in the light most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff. Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003). Evidence has been presented that plaintiff was unable to move forward and that he was forced onto the ground by defendants Gonzales and Hayward. There is also evidence that he was beaten while lying in a prone position on the ground. These facts are sufficient to show that defendants Gonzales and Hayward violated plaintiff's rights under the Eighth Amendment.

At the time of the incident on March 31, 2004, the law was "sufficiently clear that a reasonable official would understand that what he is doing violates that right," Saucier, 533 U.S. at 202 (citation omitted). With respect to excessive force claims, the "inquiry . . . is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 7. The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, whether or not significant injury is evidence. Id. at 9. No reasonable officer would have believed that kicking and/or punching a handcuffed, shackled and

proned out inmate was force "applied in a good-faith effort to maintain or restore discipline . . . ." Id. at 7. Due to the existence of material factual disputes concerning what occurred during the incident in the hallway on March 31, 2004, defendants are not entitled to qualified immunity.

### Conclusion

Based on the foregoing, it is HEREBY RECOMMENDED that defendants' motion for summary judgment, filed July 11, 2008, be GRANTED IN PART AND DENIED IN PART as follows:

1. Defendant Gonzales' and Defendant Hayward's motion for summary adjudication on plaintiff's excessive force claim against them be DENIED;

2. Defendant Gonzales' and Defendant Hayward's motion for summary adjudication on plaintiff's retaliation claim against them be GRANTED;

3. Defendant Beer's motion for summary adjudication on plaintiff's retaliation claim against him be DENIED; and

4. This matter be set for trial on plaintiff's claims against defendants Gonzales, Hayward and Beer of excessive force, in violation of the Eighth Amendment, and against defendant Beer on plaintiff's claim of retaliation in violation of the First Amendment.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **November 24, 2008**             /s/ **Dennis L. Beck**
                                        UNITED STATES MAGISTRATE JUDGE