UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ROBERT D. GIBSON, | ) | 1:03-cv-5445 OWW DLB PC |
| Plaintiff, | ) | PRETRIAL ORDER |
| v. | ) | Telephonic Motion in Limine Date: 06/12/09 at 12:00 p.m. in Courtroom 3, Seventh Floor |
| BEER, et. al., | ) | |
| Defendants. | ) | Trial Date: 06/16/09 at 9:00 a.m. in Courtroom 3, Seventh Floor (JT 3-4 days) |

## I. JURISDICTION AND VENUE

Plaintiff Robert D. Gibson ("plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on plaintiff's fourth amended complaint, filed April 21, 2005, against defendants Beer, Gonzales and Hayward ("defendants"). On January 22, 2009, the court adopted the undersigned's recommendation to grant defendants' motion for summary judgment in part and that this case proceed on plaintiff's claims against defendants Gonzales, Hayward and Beer of excessive force, in violation of the Eighth Amendment, and against defendant Beer on plaintiff's claim of retaliation in violation of the First Amendment regarding an incident occurring March 31, 2004 at California State Prison - Corcoran in Corcoran, California.

The Court has subject matter jurisdiction over this federal civil rights action. 28 U.S.C. § 1331. Venue is proper because the conduct allegedly occurred in this judicial district.

## II. JURY/NON-JURY

1. Both parties have demanded trial by jury.

# III. FACTS

A. **Undisputed Facts**

**Plaintiff's Undisputed Facts**

1. At all times relevant to the complaint, Plaintiff was a state prisoner in the custody of the California Department of Corrections and Rehabilitation("CDCR") and incarcerated at California State Prison (CSP-Corcoran) located in Corcoran California.
2. At all times relevant to the complaint, Sergeant Beer, Officer Gonzales and Officer Hayward were employees of the CDCR, and assigned to CSP-Corcoran.
3. On March 31, 2004, Plaintiff was housed in CSP-Corcoran's Security Housing Unit (SHU), in Unit 4A, 1 Right.
4. On the evening of March 31, 2004, Unit 4A underwent a search of each cell in the unit of 64 cells.
5. Defendant Gonzales ordered the Plaintiff from his cell under the threat of physical removal.
6. The Plaintiff complied with that order.
7. Defendant Gonzales and Haywards escorted Plaintiff from his cell to the unit hallway while all the other prisoners were taken outside of the Building.
8. Both Defendants Hayward and Gonzales claim to have been trained in inmate escort and control.
9. Defendants claim there was no available cells outside of the Building, where there are over 200 holding cage type cells that stretch for a quarter mile.
10. Defendant Hayward claims that he held the plaintiff's right elbow.
11. During their escort the Defendant Gonzales stomped on the bare feet (plaintiff was without shoes) and causing the plaintiff to be physically held in place by his foot.
12. The Defendants Gonzales and Haywards claim that the plaintiff was deliberately dragging his feet, to resist their control, although together their combined weight

was more than 450 pounds and they could have easily lift the plaintiff off the floor and carried him.

13. Defendants did yell wildly at the time of the attack to stop resisting.
14. Defendants claim they are trained to immediately place an inmate face down in a prone position on the floor when they become resistant.
15. Defendant Gonzales claimed to have activated his personal alarm.
16. Sergeant Beer responded to the scene and instructed the Defendants Gonzales and Haywards to bring the Plaintiff from the position on the floor to the wall in front of the main entrance into the unit/building.
17. Before March 31, Defendant Gonzales claims he had no previous problems with plaintiff.
18. Defendants filed a motion for 12(b)1 dismissal based upon the declarant Noela Grannis chief of Inmate Appeals Branch, which according to Department of Corrections Regulations was not the determinator of Inmate Grievances involving excessive use of force and this was also confirmed by the Court of Appeals in Brown v. Valoff, 422 F.3d.926.
19. Because of this fact the plaintiff allege that the defendants and their counsel used false and fraudulent evidence to manipulate the court into releasing the Supervising Defendants from this action.
20. Plaintiff did suffer serious injury and lacerations of the mouth including bleeding.

**Defendants' Undisputed Facts**

1. Plaintiff Robert D. Gibson (E-09929) was properly in the custody of the California Department of Corrections and Rehabilitation (CDCR) and serving a sentence of life without the possibility of parole, plus enhancements, following his conviction for murder in the first degree and seven counts of second degree robbery.
2. At the time of the alleged events, Plaintiff was incarcerated at California State Prison-Corcoran (CSP-Corcoran), and assigned to the Security Housing Unit

(SHU) for battery on a peace officer.

3. At all times relevant to the matters at issue, Sergeant Beer, Officer Gonzales, and Officer Hayward were employees of the CDCR, and assigned to CSP-Corcoran.

4. On March 31, 2004, Plaintiff was housed in Unit 4A, 1 Right, cell 23.

5. On the evening of March 31, 2004, Unit 4A underwent a unit cell search. A number of cells were searched, including Plaintiff's.

6. During a cell search, depending on the availability of a secure holding cell, officers escort inmates from their housing unit cells to a number of holding cages located within the unit.

7. At approximately 1925 hours, Officer Gonzales arrived at Plaintiff's cell and informed Plaintiff that he would have to be removed from his cell in order for it to be searched.

8. Officer Gonzales placed Plaintiff in restraints, and the tower officer opened the door to Plaintiff's cell.

9. Plaintiff walked out of his cell and Officers Gonzales and Hayward began to escort Plaintiff to a holding cage while the cell was searched.

10. The holding cage was located in the unit hallway.

11. Both Officers Hayward and Gonzales received training on conducting inmate escorts and responding to situations in which an inmate becomes resistive or uncooperative during an escort.

12. While escorting Plaintiff, Officer Hayward had a hold of Plaintiff's right elbow and Officer Gonzales had a hold of his left elbow.

13. During the escort, Plaintiff became resistive by dragging his feet, then attempted to break free from the officers, by pulling away from the Officers' grasps and lunging in a forward direction.

14. One way in which an inmate can become passively resistant during an escort is by dragging their feet and forcing their weight in a downward motion.

15. Officers Gonzales and Hayward ordered Plaintiff to stop resisting numerous

| | | |
|---|---|---|
| 1 | | times, but Plaintiff refused to comply with their orders. |
| 2 | 16. | In an attempt to maintain physical control of Plaintiff, Officers Gonzales and Hayward forced Plaintiff to the ground in a prone position. |
| 4 | 17. | Correctional Officers are trained to immediately place inmates in a facedown, prone position on the floor, when an inmate becomes resistive or aggressive. This technique ensures maximum control of the inmate, while reducing the danger posed to both the inmate and staff members involved in the situation. |
| 8 | 18. | With Plaintiff on the ground, Officer Gonzales activated his personal alarm. |
| 9 | 19. | Sergeant Beer responded to the scene and instructed Officers Gonzales and Hayward to assist Plaintiff to his feet for a medical examination. |
| 11 | 20. | Plaintiff was examined by Medical Technical Assistant (MTA) Lemos, who noted bleeding from Plaintiff's mouth. |
| 13 | 21. | Based on the MTA's notation, Officers Gonzales and Hayward were instructed to escort Plaintiff to the 4A program office for a video interview. |
| 15 | 22. | Lieutenant Rousseau conducted a use of force interview with Plaintiff. At the conclusion of the video interview, Officers Gonzales and Hayward escorted Plaintiff back to his cell. |
| 18 | 23. | Plaintiff was issued a disciplinary violation for resisting a peace officer. |
| 19 | 24. | On July 4, 2004, as a result of Rules Violation Report log number 4A1-04-03-34, Plaintiff was found guilty of the specific act of "Resisting a Peace Officer." |
| 21 | 25. | Prior to the March 31, 2004 incident, Plaintiff and Officer Hayward had never had any problems with each other. |
| 23 | 26. | Before the March 13, 2004 incident, Plaintiff had never filed a grievance or complaint against Officer Hayward. |
| 25 | 27. | At no point in time either before or after the March 31, 2004 incident, has Officer Hayward spoken with Plaintiff about the incident or any related grievances filed against him or any other officer. |
| 28 | 28. | Before the March 31, 2004 incident, Officer Gonzales had no previous problems |

|   |   |     |                                                                           |
|---|---|-----|---------------------------------------------------------------------------|
| 1 |   |     | with Plaintiff.                                                           |
| 2 |   | 29. | Although Plaintiff filed a complaint against Officer Gonzales, he never spoke with |
| 3 |   |     | Gonzales about any grievance, and Plaintiff possesses no evidence that Officer |
| 4 |   |     | Gonzales knew about a prior grievance filed against him.                  |
| 5 |   | 30. | At no point in time either before or after the March 31, 2004 incident, did Officer |
| 6 |   |     | Gonzales speak with Plaintiff about the incident or any related grievances filed |
| 7 |   |     | against him.                                                              |
| 8 |   | 31. | Plaintiff's ability to file grievances was not curtailed, interfered with, or chilled as |
| 9 |   |     | a result of the March 31, 2004 incident.                                  |
|10 | B.| **Disputed Facts**                                                              |
|11 |   | 1.  | Whether Plaintiff resisted Defendants Hayward and Gonzales during the escort |
|12 |   |     | from Plaintiff's cell to the holding cage.                                |
|13 |   | 2.  | Whether Plaintiff refused to comply with orders to stop his resistive behavior. |
|14 |   | 3.  | Whether any of the Defendants used excessive force on Plaintiff in violation of |
|15 |   |     | the Eighth Amendment.                                                     |
|16 |   | 4.  | Whether any of the named Defendants did anything to threaten, retaliate, or |
|17 |   |     | otherwise chill plaintiff's First Amendment rights.                       |

### IV.  DISPUTED EVIDENTIARY ISSUES

|   |     |                                                                           |
|---|-----|---------------------------------------------------------------------------|
|19 | 1.  | Defendants object to each of plaintiff's inmate witnesses on the ground that |
|20 |     | Plaintiff has not complied with the requirements for obtaining the attendance of |
|21 |     | incarcerated witnesses as set forth in the Court's Second Scheduling Order filed |
|22 |     | January 23, 2009.                                                         |
|23 | 2.  | Defendants further object to all of Plaintiff's trial exhibits except the |
|24 |     | Crime/Incident Report (CDCR Form 837) dated March 31, 2004.  Defendants   |
|25 |     | argue that the remaining exhibits are not relevant or material to the matters at |
|26 |     | issue, contain inadmissible hearsay, they contain inadmissible character evidence, |
|27 |     | and the probative value is substantially outweighed by the danger of unfair |
|28 |     | prejudice, confusion of the issues, or misleading the jury.               |

3. Defendants argue that they are entitled to present evidence of Plaintiff's felony convictions for purposes of impeachment.

## V. SPECIAL FACTUAL INFORMATION

A. <u>Plaintiff.</u>

   1. None.

B. <u>Defendants</u>

   1. None.

## VI. RELIEF SOUGHT

1. Plaintiff seeks monetary damages, injunctive relief and declaratory relief. Defendants seek judgment in their favor and an award of costs and fees.

## VII. POINTS OF LAW

A. <u>Excessive Force</u>

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." <u>Hudson v. McMillian</u>, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." <u>Id.</u> (internal quotation marks and citations omitted). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. <u>Id.</u> at 9; <u>see also</u> <u>Oliver v. Keller</u>, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines <u>de minimis</u> uses of force, not <u>de minimis</u> injuries)). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." <u>Id.</u> at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition <u>de minimis</u> uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." <u>Id.</u> at 9-10 (internal quotations marks and citations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to

7

cause harm." Id. at 7. "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (internal quotation marks and citations omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id.

B. Retaliation

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support claim under section 1983. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).

**VIII. ABANDONED ISSUES**

1. None.

**IX. WITNESSES**

A. Plaintiff

    1. Robert D. Gibson, CDCR Inmate No. E-09929

B. Defendants

    1. W. Hayward

    2. J. Gonzales

    3. R. Beer

|     |     |     |
| --- | --- | --- |
| 1   | 4.  | F. Lemos |
| 2   | 5.  | S. Rousseau |
| 3   | 6.  | D. Robertson |

Plaintiff and Defendants' Counsel are each ordered to submit a list of witnesses to the court along with a copy for use by the Courtroom Deputy Clerk, on the same date and at the same time as the list of exhibits are to be submitted as ordered below.

CAUTION

Plaintiff and Defendants' Counsel are cautioned that expert witnesses, including percipient experts, must be designated as such. No witness, not identified as a witness in this order, including "rebuttal" witnesses, will be sworn or permitted to testify at trial.

## X.  EXHIBITS, SCHEDULES AND SUMMARIES

The following is a list of documents or other exhibits that the parties expect to offer at trial.

CAUTION

Only exhibits so listed will be permitted to be offered into evidence at trial, except as may be otherwise provided in this order. No exhibit not designated in this pretrial order shall be marked for identification or admitted into evidence at trial.

A. Plaintiff's Exhibits

1. CDC-837 report dated March 31, 2004 and June 16, 2002 and all or some [of] those reports;
2. Governor's Independent panel reports, authored by Ex Governor Dukmeijian June 30, 2004;
3. Special Master's Report John H. Hagar, March 2004, November 16, 2006, August 22, 200;
4. Miscellaneous documents or transcripts from Brookin v. Vogel et. al. on testimony of defendants Beer, and Haywards;
5. Reports from hearings held at State Capitol by Jackie Speiers, U.S. Congresswoman 8th Dist. of California, when she was a state senator on the

training of the use of false reporting and duplicity by California Prison system;

6. Miscellaneous court complaints and reports in the following actions on excessive force use at Corcoran Prison.
   a) Lopez v. Scribner CV-04-05595-OWW
   b) Willaims v. Schwarzenegger CV-03-5942-OWW
   c) Kaur v. Steinberg CV-05-00276-OWW
   d) Brown v. Valoff CV-01-06526-OWW, Magistrate' Findings and Dist Ct Judge Wanger adoption order
   e) Richard Krupp v. California Dept of Corrections, complaint
   f) Amy Hinchee v. California Dept of Corrections, complaint
   g) Cordero v. Chief Medical Officer of Corcoran Prison #CV-05-0268-REC
   h) Coleman v. Schwarzenegger CV-S-90-3094-LKK, Cultural assessment Report Corcoran Prison Security Housing Unit use of force.

7. Miscellaneous Court Records from Plaintiff's Criminal Convictions and Appeals
   a) People v. Gibson #A799355, Los Angeles Superior Court, 1988
   b) Jury verdict forms Dec 16 & 19, 1988
   c) Direct Appeal Opinion reversing conviction, 1991
   d) Court of Appeal Opinion on civil matter related to convictions 1997
   e) California Senate bill 406, 1979 Wilson, penal code 1203.075a Great Bodily Injury defined
   f) Miscellaneous letters from legal experts pertaining to plaintiff's present sentence and conviction;
   g) Miscellaneous letters prison officials concerning the illegality of present sentence
   h) Clerical records from Superior Court #A799355

|  |  | I) | News article, Los Angeles Times Dec 1, 1988 |
|---|---|---|---|
|  |  | j) | Senate Bill 914, Feb 27, 1997 amendment to penal code 654 |
|  |  | k) | Habeas Corpus Superior Court Los Angeles; Morris B. Jones Judge 1995 |

    8. Prison Regulations, Department Operational Manual, sections #31140.4.1 and #31140.6.2

    9. Letter to Department of Corrections, Internal Affairs, October 10, 2001

    10. Letter to Federal Bureau of Investigations, June 27, 2001

    11. California Code of Regulations section #3391(a)

    12. Custody Sign in & out sheet, Wednesday March 31, 2004 Facility 4A.

B.   <u>Defendants' Exhibits</u>

    1. Abstracts of judgments for felony convictions of plaintiff and any inmate witnesses he is allowed to call;

    2. Plaintiff's Movement History;

    3. Crime/Incident Report, Log No. COR-04A-04-03-0200 dated 3/31/04;

    4. Videotape of Interview with Plaintiff dated 3/31/04, Log No. COR-04A-04-03-0200;

    5. Selected portions of Plaintiff's deposition transcript;

    6. Plaintiff's Medical Records from February 1, 2004 through May 1, 2004;

    7. Plaintiff's Dental Records from December 2003 through December 2004;

    8. Plaintiff's Inmate/Parolee Appeal Form, Log No. 04-2446 dated 7/10/04;

    9. Plaintiff's SHU Segregation Logs from January 2004 through June 2004;

    10. Appeals Tracking System Printout of all appeals filed by Plaintiff.

### XI. DISCOVERY DOCUMENTS

Only specifically designated discovery requests and responses will be admitted into evidence. Any deposition testimony shall be designated by page and line and such designations filed with the Court on or before **May 22, 2009**. The opposing party shall counter-designate by line and page from the same deposition and shall file written objections to any question and

answer designated by the opposing party and filed with the court on or before **June 5, 2009**.

Written discovery shall be identified by number of the request. The proponent shall lodge the original discovery request and verified response with the courtroom deputy one day prior to trial. The discovery request and response may either be read into evidence, or typed separately, marked as an exhibit, as part of the exhibit marking process, and offered into evidence.

A. <u>Plaintiff's List</u>

    1. Plaintiff will offer defendants' responses to interrogatories at trial.

B. <u>Defendants' List</u>

    1. Defendants may introduce portions of the transcript of Plaintiff's deposition taken on March 13, 2008.

## XII. STIPULATIONS

1. As discussed during the telephonic trial confirmation hearing, Counsel for Defendants will not challenge for lack of authentication any of Plaintiff's exhibits listed in this Pre-Trial Order that would be authenticated by: 1) Congresswoman Jackie Speiers or the Office of Legislative Counsel; 2) the Custodian of Records at California State Library; 3) State Senator Gloria Romero; or 4) the California Senate Committee on Public Safety, provided that the documents are matters of public record, and are ruled relevant and admissible. Plaintiff shall provide copies of those documents to Defendants' Counsel as soon as possible.

## XIII. AMENDMENTS - DISMISSALS

1. None.

## XIV. FURTHER TRIAL PREPARATION

A. <u>Trial Briefs.</u>

Plaintiff and Defendants' Counsel are directed to file a trial brief in this matter on or before **June 5, 2009.** No extended preliminary statement of facts is required. The brief should address disputed issues of substantive law, disputed evidentiary issues of law that will not be resolved <u>in limine</u>, and any other areas of dispute that will require resolution by reference to legal authority.

B. <u>Duty of Counsel To Pre-Mark Exhibits</u>.

1. Plaintiff and Defendants' Counsel are ordered to meet and conduct a joint exhibit conference for the purposes of pre-marking and examining each other's exhibits and preparing an exhibit index.[1] All joint exhibits will be pre-marked JX1-JX50; all of the plaintiff's exhibits will be pre-marked with numbers 51-150; all of defendant's exhibits will be pre-marked with numbers 151-250.

2. Each and every page of each and every exhibit shall be individually Bates-stamped for identification purposes, and paginated with decimals and arabic numerals in seriatim; i.e., 1.1, 1.2, 1.3 . . ..

3. Following such conference, each counsel shall have possession of four (4) complete, legible sets of exhibits, for use as follows:

    a. Two (2) sets to be delivered to the Courtroom Deputy Clerk, Alice Timken, **no later than 4:00 p.m. on June 5, 2009**, an original for the court and one for the witness.

    b. One (1) set to be delivered to counsel for the opposing party and one (1) set to be available for counsel's own use.

4. Plaintiff and Defendants' Counsel are to confer to make the following determination as to each of the exhibits proposed to be introduced into evidence and prepare separate indexes, one listing joint exhibits, one listing each party's exhibits[2]:

    a. Joint exhibits, i.e., any document which both sides desire to introduce into evidence, will be marked as a joint exhibit (JX), and numbered JX1-___. Joint exhibits shall be listed as such in the exhibit list in a column that notes they are admitted into evidence without further foundation;

    b. As to any exhibit, not a joint exhibit, to which there is no objection to its introduction into evidence, the exhibit will be marked as Plaintiff's Exhibit ___, or Defendant's Exhibit ___ in evidence, and will be listed in the exhibit list as the

---

[1] **The parties may meet and confer by telephone.**

[2] **The parties may meet and confer by telephone.**

exhibit of the offering party;

    c.    The exhibit list shall include columns for noting objections to exhibits. The first column will list any objections as to foundation; i.e., Plaintiff's Foundation 2 - "not authenticated."

    d.    The exhibit list shall include a second column for noting substantive objections to exhibits based on any other grounds; i.e., "hearsay, improper opinion, irrelevant."

    e.    The exhibit list shall include a description of each exhibit on the left-hand side of the page, and the three columns outlined above (as shown in the example below).

List of Exhibits

| Exhibit # | Description | Admitted In Evidence | Objection To Foundation | Other Objection |
|---|---|---|---|---|

    f.    The completed exhibit list shall be delivered to the Courtroom Deputy Clerk on or before **June 5, 2009, at 4:00 p.m.**

    g.    If originals of exhibits cannot be located, copies may be used, however, the copies <u>must be legible and accurate</u>. If any document is offered into evidence that is partially not legible, the Court <u>sua sponte</u> will exclude it from evidence.

C.    <u>Discovery Documents</u>.

    1.    Plaintiff and Defendants' Counsel shall file a list of discovery documents with the Courtroom Deputy Clerk at the same time and date as the witness and exhibit lists are lodged with the Courtroom Deputy Clerk, unless the discovery documents are marked as exhibits, which counsel intend to use at trial by designating by number, the specific interrogatory, request for admission, or other discovery document. Plaintiff and Defendants' Counsel shall comply with the directions of subsection XII (above) for introduction of the discovery document into evidence.

D.    <u>Motions In Limine</u>.

    1.    The motions in limine shall be filed by **May 22, 2009**, and any responses shall be

filed by **June 5, 2009.** The Court will conduct a telephonic hearing on motions in limine in this matter on **June 12, 2009, at 12:00 p.m.** in Courtroom 3, Seventh Floor, before the Honorable Oliver W. Wanger United States District Judge, at which time all evidentiary objections, to the extent possible, will be ruled upon, and all other matters pertaining to the conduct of the trial will be settled.

Counsel for defendants is required to arrange for the participation of plaintiff at the telephonic hearing and to initiate the telephonic hearing at **(559) 499-5650**.

E. <u>Trial Documents</u>.

1. <u>Exhibits To Be Used With Witness</u>. During the trial of the case, it will be the obligation of counsel to provide opposing counsel not less than forty-eight hours before the witness is called to the witness stand, the name of the witness who will be called to testify and to identify to the Court and opposing counsel any exhibit which is to be introduced into evidence through such witness that has not previously been admitted by stipulation or court order or otherwise ruled upon, and to identify all exhibits and other material that will be referred to in questioning of each witness. If evidentiary problems are anticipated, the parties must notify the court at least twenty-four hours before the evidence will be presented. F. <u>Counsel's Duty To Aid Court In Jury Voir Dire</u>.

1. Plaintiff and Defendants' Counsel shall submit proposed voir dire questions, if any, to the Courtroom Deputy Clerk at atimken@caed.uscourts.gov on or before **June 5, 2009 at 4:00 p.m.**
Plaintiff and Defendants' Counsel shall also prepare a joint "statement of the case" which shall be a neutral statement, describing the claims and defenses for prospective jurors, to be used in voir dire.

2. In order to aid the court in the proper voir dire examination of the prospective jurors, Plaintiff and Defendants' Counsel are directed to lodge with the Court the day before trial a list of the prospective witnesses they expect to call if

15

different from the list of witnesses contained in the Pre-Trial Order of the Court.  Such list shall not only contain the names of the witnesses, but their business address to the extent known.  This does not excuse any failure to list all witnesses in the Pre-Trial Order.

       3.      Plaintiff and Defendants' Counsel shall jointly submit, to the Courtroom Deputy Clerk, the day before trial, a neutral statement of the claims and defenses of the parties for use by the court in voir dire.

G.    <u>Counsel's Duty To Prepare And Submit Jury Instructions</u>.

       1.      All proposed jury instructions shall be filed and served on or before **June 5, 2009, by 4:00 p.m**.  Jury instructions shall be submitted in the following format.

       2.      Counsel for Defendants shall submit the proposed jury instructions, including verdict forms, via e-mail to dpell@caed.uscourts.gov formatted in WordPerfect for Windows 10.  Counsel shall be informed on all legal issues involved in the case.

       3.      The parties are required to jointly submit one set of agreed upon jury instructions.  To accomplish this, the parties shall serve their proposed instructions upon the other at least fourteen days prior to trial.  The parties shall then meet, confer, and submit to the Court the Friday before the trial is to commence, one complete set of agreed-upon jury instructions.[3]

       4.      If the parties cannot agree upon any instruction, they shall submit a supplemental set of instructions designated as not agreed upon by **June 5, 2009, at 4:00 p.m.**

       5.      Each party shall file with the jury instructions any objection to non-agreed upon instructions proposed by any other party.  All objections shall be in writing and shall set forth the proposed instruction objected to in its entirety.  The objection should specifically set forth the objectionable matter in the proposed instruction and shall include a citation to legal authority explaining the grounds for the objection and why the instruction is

---

[3] **The parties may meet and confer by telephone.**

16

improper. A concise statement of argument concerning the instruction may be included. Where applicable, the objecting party shall submit an alternative proposed instruction covering the subject or issue of law.

      6.    <u>Format</u>. The parties shall submit one copy of each instruction. The copy shall indicate the party submitting the instruction, the number of the proposed instruction in sequence, a brief title for the instruction describing the subject matter, the test of the instruction, the legal authority supporting the instruction, and a legend in the lower lefthand corner of the instruction: "Given," "Given As Modified," "Withdrawn" and "Refused" showing the Court's action with regard to each instruction and an initial line for the judge's initial in the lower right-hand corner of the instruction. Ninth Circuit Model Jury Instructions should be used where the subject of the instruction is covered by a model instruction.

      7.    All instruction should be short, concise, understandable, and neutral statements of the law. Argumentative or formula instructions will not be given, and should not be submitted.

      8.    Parties shall, by italics or underlining, designate any modifications of instructions from statutory authority, or any pattern instruction such as the Model Circuit Jury Instructions or any other source of pattern instructions, and must specifically state the modification made to the original form instruction and the legal authority supporting the modification.

      9.    Proposed verdict forms shall be jointly submitted or if the verdict forms are unagreed upon, each party shall submit a proposed verdict form. Verdict forms shall be submitted to the Courtroom Deputy Clerk on the first day of the trial.

      10.    Failure to comply with these rules concerning the preparation and submission of instructions and verdict forms may subject the non-complying party and/or its attorneys to sanctions.

## XV. USE OF LAPTOP COMPUTERS/POWERPOINT FOR PRESENTATION OF EVIDENCE

      1. If Defendants' counsel intends to use a laptop computer for presentation of evidence,

they shall contact Alice Timken, Courtroom Deputy Clerk, at least one week prior to trial. The Courtroom Deputy Clerk will arrange a time for any attorney to bring any laptop to be presented to someone from the Court's Information Technology Department, who will provide brief training on how the parties' electronic equipment interacts with the court's audio/visual equipment. If counsel intend to use PowerPoint, the resolution should be set no higher than 1024 x 768 when preparing the presentation.

2. ALL ISSUES CONCERNING AUDIO-VISUAL MATERIALS AND COMPUTER INTERFACE WITH THE COURT'S INFORMATION TECHNOLOGY SHALL BE REFERRED TO THE COURTROOM DEPUTY CLERK.

## XVI. FURTHER DISCOVERY OR MOTIONS

1. None.

## XVII. SETTLEMENT

1. The parties do not expect that settlement negotiations between the parties would be helpful.

## XVIII. SEPARATE TRIAL OF ISSUES

1. Defendants request that the trial be bifurcated for punitive damages.

## XIX. IMPARTIAL EXPERTS, LIMITATIONS OF EXPERTS

1. None.

## XX. ATTORNEYS' FEES

Plaintiff is proceeding pro se and is not entitled to attorneys' fee. Defendants will seek attorneys' fees if they prevail.

## XXI. ESTIMATE OF TRIAL TIME

3-4 days.

## XXII. TRIAL DATE

June 16, 2009, 9:00 a.m., Courtroom 3, Seventh Floor.

## XXIII. NUMBER OF JURORS AND PEREMPTORY CHALLENGES

1. Eight jurors, four peremptory challenges per side.

## XXIV. AMENDMENT OF FINAL PRETRIAL ORDER

1. The Final Pretrial Order shall be reviewed by the parties and any corrections, additions, and deletions shall be drawn to the attention of the Court no later than April 3, 2009. Otherwise, the Final Pretrial Order may only be amended or modified to prevent manifest injustice pursuant to the provisions of Fed. R. Civ. P. 16(e).

### XXV. MISCELLANEOUS

1. Plaintiff has submitted a motion for the attendance of twenty-one inmate witnesses but has not complied with the procedure for obtaining their attendance at trial, as set forth in the Court's Second Scheduling Order. (Docs. 329, 343). The Court will not issue an order commanding the warden or other custodian to permit the inmates to be transported because plaintiff has not submitted the requisite declarations, the procedure for which is detailed in the Second Scheduling Order, showing that each witness has actual knowledge of relevant facts.

Based on Plaintiff's declarations at the telephonic trial confirmation hearing, the Court will extend the deadline for filing a renewed motion for the attendance of the following five incarcerated inmates only, to **April 30, 2009**:

1. Lonnie Williams, CDCR Inmate No. T-54378
2. Benjie D. Brookins, CDCR Inmate No. E-80932
3. Roderick Washington, CDCR Inmate No. E-87177
4. Unknown Prisoner in Grievance No. CSP-COR-04-3495
5. Unknown Prisoner in Grievance No. CSP-COR-04-3422

Plaintiff is not aware if any of his proposed inmate witnesses have been released from custody (i.e., whether they are now unincarcerated). The Court shall extend the deadline for submitting money orders, only with respect to the above-listed five inmates and only in the event that any of these proposed witnesses are now unincarcerated. The money orders must be submitted no later than **April 30, 2009.** (See Second Scheduling Order, Court Doc #329, Paragraph 4, for instructions).

IT IS SO ORDERED.

Dated: **March 23, 2009**            /s/ **Dennis L. Beck**
                                     UNITED STATES MAGISTRATE JUDGE